UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORENZO WILES,

    Petitioner,

v.                                                  Case No. 8:21-cv-183-WFJ-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Lorenzo Wiles, a Florida prisoner, timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent filed a response opposing the petition. (Doc. 10). Mr. Wiles filed a reply. (Doc. 16). Upon consideration, the petition is **DENIED**.

**I.**     **Background**

In March 2012, a state-court jury convicted Mr. Wiles of violating Florida's Racketeer Influenced and Corrupt Organization ("RICO") Act, conspiracy to commit racketeering, trafficking in cocaine, and conspiracy to traffic in cocaine. (Doc. 10-2, Ex. 6). The state trial court sentenced him to concurrent terms of twenty-five years' imprisonment on each count. (*Id.*) In addition, the sentences for trafficking and conspiracy to traffic included mandatory minimum terms of fifteen years' imprisonment. (*Id.*) The state appellate court *per curiam* affirmed the convictions and sentences. (*Id.*, Ex. 11).

1

Mr. Wiles subsequently filed petitions alleging ineffective assistance of appellate counsel. (*Id.*, Exs. 14, 15). In April 2015, the state appellate court granted the amended petition in part, holding that Mr. Wiles's appellate counsel "was ineffective in failing to argue that his convictions for both conspiracy to commit racketeering and conspiracy to traffic in cocaine violate[d] the prohibition against double jeopardy." (*Id.*, Ex. 18, at 2-3). The court thus permitted Mr. Wiles to file a second direct appeal. (*Id.* at 4).

In August 2016, the state appellate court ruled that double jeopardy barred Mr. Wiles's "convictions for both conspiracy to traffic in cocaine and conspiracy to commit racketeering." (*Id.*, Ex. 27, at 1-2). As a result, the court "reverse[d] and remand[ed] for the trial court to vacate" the sentence for conspiracy to commit racketeering, the "lesser punishable offense." (*Id.* at 4). The court affirmed Mr. Wiles's "remaining convictions and sentences in all other respects." (*Id.*) The trial court subsequently entered an amended judgment and sentence vacating the conviction for conspiracy to commit racketeering. (*Id.*, Ex. 29).

In April 2017, Mr. Wiles moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (*Id.*, Ex. 30). He later filed an amended Rule 3.850 motion. (*Id.*, Ex. 32). The state postconviction court ultimately rejected all of Mr. Wiles's claims, issuing a final order denying relief on July 8, 2020. (*Id.*, Exs. 31, 33, 36). That order informed Mr. Wiles that he had "thirty (30) days from the date of this Final Order within which to appeal." (*Id.*, Ex. 36, at 6). Mr. Wiles missed the deadline to appeal.

On October 23, 2020, Mr. Wiles filed a petition for belated appeal, contending that COVID-related restrictions at his prison had interfered with his ability to file a timely

appeal. (*Id.*, Ex. 38). The state appellate court denied the petition. (*Id.*, Ex. 41). Mr. Wiles subsequently filed his federal habeas petition, which raises three claims of ineffective assistance of trial counsel. (Doc. 1).

## II.     Standards of Review

### A.     Exhaustion of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).

A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson*, 353 F.3d at 892.

### B. Ineffective Assistance of Counsel

Mr. Wiles alleges ineffective assistance of trial counsel. Ineffective-assistance-of-counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Wiles must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Wiles must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### III. Discussion

    A.    **Grounds One and Two**

In Ground One, Mr. Wiles alleges that trial counsel was ineffective for (1) failing to object when his co-defendant Collier Childs "testif[ied] as an expert witness," and (2) failing to establish for the jury that "Mr. Childs's real motive for testifying was [to receive] a more lenient sentencing recommendation" from the State. (Doc. 1 at 9). In Ground Two, Mr. Wiles claims that trial counsel provided ineffective assistance by (1) neglecting to file a motion to suppress certain "phone calls" on the ground that they were "partially inaudible," and (2) failing to object when a detective provided a "narrative" description at trial of this allegedly "unintellig[ible]/inaudible evidence." (*Id.* at 11).

Respondent is correct that Grounds One and Two are procedurally defaulted because Mr. Wiles did not properly exhaust them in state court. (Doc. 10 at 4-5). Mr. Wiles raised these claims in his Rule 3.850 motion, and the state postconviction court rejected them. (Doc. 10-2, Exs. 30, 31, 32, 33, 36). But Mr. Wiles did not timely appeal the denial of his Rule 3.850 motion. Instead, over two months after the appeal deadline passed, Mr. Wiles filed a petition for belated appeal, which the state appellate court denied. (*Id.*, Exs. 38, 41).

Mr. Wiles's failure to timely appeal the denial of his Rule 3.850 motion caused a procedural default of Grounds One and Two. *See Boerckel*, 526 U.S. at 847 ("[Petitioner]'s failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing

5

of a Rule 3.850 motion, but an appeal from its denial."); *Roberts v. Sec'y, Fla. Dep't of Corr.*, No. 3:18-cv-434-TJC-JRK, 2021 WL 808852, at *7 (M.D. Fla. Mar. 3, 2021) (holding that claims were "unexhausted and procedurally defaulted" because petitioner "did not timely appeal the denial of his Rule 3.850 motion" and the state appellate court "found [he] was not entitled to a belated appeal"). These claims are therefore barred from review "unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith*, 256 F.3d at 1138.

Mr. Wiles seeks to establish cause for the default based on his alleged inability to file a timely notice of appeal. (Doc. 16 at 6-8). As noted above, the state postconviction court issued its final order denying relief on July 8, 2020, and informed Mr. Wiles that he had "thirty (30) days from the date of this Final Order within which to appeal." (Doc. 10-2, Ex. 36, at 6). According to Mr. Wiles, on July 23, 2020, his prison "went on full institutional quarantine" due to COVID-19. (*Id.*, Ex. 38, at 3). As a result, "no inmates were allowed to have contact with any inmate outside of the dormitory they were assigned to." (*Id.*) Moreover, the "law library remained closed" during this time. (Doc. 16 at 7). Mr. Wiles also alleges that, at some unspecified time during the thirty-day appeal window, he tested positive for COVID-19 and was "placed into medical isolation." (*Id.*) He claims he was "released from medical isolation" on September 4, 2020, and moved to a "medical recovery dorm." (Doc. 10-2, Ex. 38, at 3). Shortly thereafter, the law library reopened, and Mr. Wiles filed his unsuccessful petition for belated appeal. (Doc. 16 at 7).

These allegations are insufficient to establish that "some external impediment prevent[ed]" Mr. Wiles from timely appealing the denial of his Rule 3.850 motion.

6

*Alderman v. Zant*, 22 F.3d 1541, 1551 (11th Cir. 1994) (emphasis omitted). As an initial matter, Mr. Wiles does not claim that he was unaware of the denial of his Rule 3.850 motion until the time to appeal had expired. Instead, he points to several COVID-related restrictions in place during the appeal window. One such restriction was the temporary closure of the law library. Although inability to access a law library can in principle supply cause for a default, the petitioner must "specif[y] what materials he needed but could not get because of the lack of access to [the] law library." *Duncan v. Jones*, No. CA 13-0603-WS-C, 2014 WL 2155366, at *12 (S.D. Ala. May 22, 2014). Mr. Wiles fails to explain why he needed to visit the law library to prepare his notice of appeal—a "simple task" in Florida state court. *Daniels v. Sec'y, Dep't of Corr.*, No. 8:19-cv-406-WFJ-JSS, 2021 WL 2228393, at *2 n.2 (M.D. Fla. May 19, 2021); *see also Jordan v. State*, 549 So. 2d 805, 806 (Fla. 1st DCA 1989) ("We do not believe that access to a law library is necessary to prepare and transmit a simple notice of appeal."). The default is therefore not excused based on the temporary closure of the law library. *See Wallace v. Sec'y, Fla. Dep't of Corr.*, No. 15-13486-D, 2016 WL 11848476, at *2 (11th Cir. Sept. 12, 2016) ("[Petitioner] did not allege that he was unaware of the state court's denial of his Rule 3.850 motion until the time for appealing it had expired. Therefore, he could have appealed the denial of his Rule 3.850 motion even if he did not have access to the prison law library and the library was small and understaffed.").

Mr. Wiles also cites the "full institutional quarantine" that was allegedly implemented two weeks after the denial of his Rule 3.850 motion. (Doc. 10-2, Ex. 38, at 3; Doc. 16 at 7). According to Mr. Wiles, the quarantine meant that "no inmates were

7

allowed to have contact with any inmate outside of the dormitory they were assigned to." (Doc. 10-2, Ex. 38, at 3). But Mr. Wiles fails to explain why he needed to contact inmates outside his unit in order to file a timely appeal. In any event, the "inability to secure prison law clerk assistance do[es] not constitute cause" for a default. *Francis v. Sec'y, Dep't of Corr.*, No. 8:15-cv-2205-CEH-AAS, 2018 WL 3093481, at *4 (M.D. Fla. June 22, 2018) (collecting cases); *see also Whiddon v. Dugger*, 894 F.2d 1266, 1267 (11th Cir. 1990) (holding that "poor advice by inmate law clerks" and lack of "legal assistance in preparing [] collateral petition" do not establish cause); *Daniels*, 2021 WL 2228393, at *2 (finding that petitioner's "assertion that he had no 'legal assistance' to help him file a notice of appeal [was] insufficient to demonstrate cause for the default").

Mr. Wiles likewise fails to establish cause based on his placement in "medical isolation." (Doc. 16 at 7). He does not allege any facts suggesting that, while in isolation, he was unable to prepare and mail a notice of appeal to the state court. He also fails to specify when he tested positive for COVID-19 and was separated from the general prison population. Absent any indication that Mr. Wiles's "medical isolation" prevented him from timely appealing the denial of his Rule 3.850 motion, the Court cannot excuse the default on that basis. *See, e.g., Walker v. Schweitzer*, No. 5:17-cv-2361, 2020 WL 981431, at *9 (N.D. Ohio Feb. 7, 2020) ("[A] mere claim of being in segregation, without more, does not establish cause to excuse a procedural default." (collecting cases)), *adopted by* 2020 WL 977965 (N.D. Ohio Feb. 28, 2020).

In short, Mr. Wiles fails to set forth specific facts demonstrating how the COVID-related restrictions at his facility prevented him from filing a timely appeal. Thus, he has not established cause for the default, and Grounds One and Two are barred from review.

### B. Ground Three

In Ground Three, Mr. Wiles alleges that his trial counsel rendered ineffective assistance by misadvising him about an alleged seven-year plea offer from the State. (Doc. 1 at 13). According to Mr. Wiles, counsel failed to inform him that he faced "a possible sentence of 240 years" and was subject to "minimum mandator[y]" sentencing provisions. (*Id.*) Mr. Wiles claims that, had he known these facts, he "would have accepted the State's offer of [seven] years," which allegedly "was available up to and including the day of trial." (*Id.*)

Respondent correctly contends that this claim is unexhausted and procedurally defaulted because Mr. Wiles never raised it in state court. (Doc. 10 at 6). Indeed, he did not assert Ground Three in his Rule 3.850 motion or any other state-court filing. This claim is therefore barred from review absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." *Smith*, 256 F.3d at 1138.

Mr. Wiles fails to establish that an exception applies to excuse the default.[1] In his reply, he states, without elaboration, that "an attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute 'cause' to excuse a

---

[1] Mr. Wiles's allegations about COVID-related restrictions do not apply to Ground Three. The default of that claim was caused, not by Mr. Wiles's failure to timely appeal the denial of his Rule 3.850 motion, but rather by his failure to raise the claim at the trial-court level. Both the original and amended Rule 3.850 motions were filed well before the onset of the COVID pandemic. (Doc. 10-2, Exs. 30, 32).

9

default." (Doc. 16 at 6). Mr. Wiles was not represented by counsel during his state postconviction proceedings. (Doc. 10-2, Exs. 30, 32, 35). But even if this statement could be liberally construed to invoke the equitable exception recognized in *Martinez v. Ryan*, 566 U.S. 1 (2012), Mr. Wiles would not be entitled to relief. *Martinez* held that a petitioner may establish cause for the default of a claim of ineffective assistance of trial counsel where (1) "in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective," and (2) the defaulted claim is a "substantial one," meaning that "the claim has some merit." *Martinez*, 566 U.S. at 14, 17. A petitioner shows that his defaulted claim is "substantial" under *Martinez* by demonstrating that "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" *Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014)).

*Martinez* does not excuse the default of Ground Three because the underlying ineffective-assistance claim is not "substantial." *Martinez*, 566 U.S. at 14. "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). To establish prejudice in this context, a petitioner must show that, "but for the ineffective assistance of counsel, a reasonable probability existed that: (1) the plea offer would have been presented to the court (*i.e.* the [petitioner] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) under the offer's terms, the conviction or sentence, or both,

10

would have been less severe than under the judgment and sentence that were, in fact, imposed." *Carmichael v. United States*, 966 F.3d 1250, 1259 (11th Cir. 2020).

Mr. Wiles's claim fails at the outset because he presents no evidence that a seven-year offer existed. Moreover, the Court's independent review of the state-court record fails to reveal any evidence of such an offer. Because there is no basis to conclude that the State ever made a seven-year offer, Mr. Wiles fails to establish that his counsel was deficient. *See Borgwald v. Sec'y, Fla. Dep't of Corr.*, No. 17-13168-H, 2018 WL 7108247, at *5 (11th Cir. Sept. 6, 2018) ("[Petitioner] argues that his counsel erred by not conveying a plea offer to him, but there is no evidence in the record that the government offered [him] any sort of plea deal."); *Nelson v. Sec'y, Dep't of Corr.*, No. 8:14-cv-1257-CEH-JSS, 2018 WL 11198331, at *2 (M.D. Fla. Oct. 18, 2018) (holding that ineffective-assistance claim was not "'substantial' under *Martinez*" because petitioner failed to "offer[] any evidence that the State actually made a 10-year plea offer"); *Del Toro v. Sec'y, Dep't of Corr.*, No. 8:15-cv-1642-CEH-AEP, 2018 WL 1992170, at *8 (M.D. Fla. Apr. 27, 2018) (finding that "defaulted claim of ineffective assistance" was "not substantial" under *Martinez* because petitioner "present[ed] no evidence that the State in fact made an eight-year offer").

Even assuming that a seven-year offer existed, the *Strickland* claim fails for lack of prejudice. To show prejudice, Mr. Wiles must establish a "reasonable probability" that "the court would have accepted [the] terms" of the alleged offer. *Carmichael*, 966 F.3d at 1259. As noted above, Mr. Wiles faced fifteen-year mandatory minimums on two counts, and he ultimately received a total sentence of twenty-five years in prison. (Doc. 10-2, Exs. 6, 29). In addition, Mr. Wiles had "been to prison three different times for drug sales beginning

11

when he was 18 years old." (*Id.*, Ex. 5, at 4). In light of Mr. Wiles's criminal history and the fifteen-year mandatory minimums he faced, he has not shown a reasonable probability that the court would have accepted a negotiated plea of seven years' imprisonment. *See Duffy v. Sec'y, Dep't of Corr.*, 729 F. App'x 669, 670-71 (11th Cir. 2018) ("Nor has [petitioner] has cited to anything suggesting that the trial court would have accepted the negotiated plea of a four-year sentence, especially when the mandatory-minimum sentence was fifteen years' imprisonment."); *Bethea v. Sec'y, Dep't of Corr.*, No. 16-14689-E, 2016 WL 11859834, at *3 (11th Cir. Nov. 3, 2016) (finding that petitioner "ha[d] not shown that the trial court would have accepted" a "12-year plea deal" where he had an "extensive criminal history" and was subject to a "15-year mandatory minimum"); *Nelson*, 2018 WL 11198331, at *2 ("[Petitioner] does not establish a reasonable probability that the state court would have accepted a negotiated plea for 10 years, especially considering that [he] was eligible for and received life sentences on counts one and two").

Thus, even if Mr. Wiles had invoked *Martinez*, he would not be entitled to relief because his ineffective-assistance claim is not substantial. Ground Three is denied.[2]

Accordingly, the Court **ORDERS**:

1. Mr. Wiles's petition (Doc. 1) is **DENIED**.

---

[2] Mr. Wiles seeks an evidentiary hearing on his claims. (Doc. 1 at 19). The Court concludes that an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

2. The **CLERK** is directed to enter judgment against Mr. Wiles and to **CLOSE** this case.

3. Mr. Wiles is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Wiles must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Wiles has not made the requisite showing. Because Mr. Wiles is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on December 21, 2023.

WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE